

Myers & Galiardo, LLP | 52 Duane Street, 7Fl., New York, NY 10007 | 212-986-5900 | www.citylaw.nyc

BY ECF:
Honorable Denise L. Cote
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

January 22, 2021

**Letter Memorandum in the Matter of:**
<u>**United States v. Benzion Zirkind**</u>
**Case No. 19 CR 463-(DLC)**

Your Honor:

We submit this letter memorandum in connection with the sentencing of our client, Benzion Zirkind, currently scheduled to appear on February 5, 2021 for sentencing. The Defendant respectfully moves this Court to sentence Mr. Zirkind to a sentence in accordance with *18 U.S.C. §1956 Conspiracy to Commit Money Laundering and after considering the factors under § 3553(a), and after consulting the United States Sentencing Guidelines pursuant to United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).* Most recently, the Supreme Court reminded the district courts to read the United States Sentencing Guidelines as "effectively advisory" after Booker, *id*., at 245. The Supreme Court went on to state: "In accord with *18 U.S.C. 3553(a),* the Guidelines, formerly mandatory, now server as **one factor** among several courts must consider in determining an appropriate sentence." <u>Kimbrough v. United States</u> *552 U.S. 85, 90 (2007).*

**Departure from the Guidelines: Legal Discussion**

We are asking the Court to impose a sentence of home confinement of six months, community service, and the appropriate forfeiture after consideration of the guidelines using the mitigating factors under §3553. Because of the holding in *Booker*, it is fundamental to the Court's consideration that it impose a sentence "sufficient but not greater than necessary," to comply with the purpose of sentencing under 18 U.S.C. § 3553(a). <u>United States v. Rodriguez-Rodriguez,</u> 441 F.3d 767 (9th Cir. 2006).

The "parsimony provision" is the guidepost for sentencing decisions post-*Booker*: U.S. v. Cull 446 F.Supp.2d 961 (E.D. Wisc. 2006).

This requires the Court to impose the least severe sentence necessary to satisfy the four purposes of sentencing – punishment, deterrence, protection of the public, and rehabilitation. The directive to the district court is not to be confused with the test on

appeal as to whether the district court's sentence is "reasonable." U.S. v. Collington, 461 F.3d 805 (6th Cir. 2006).

Because the guidelines are not binding, "Court's need not justify a sentence outside of them by citing factors that take the case outside the "heartland". U.S. v. Williams, 435 F. 3d 1350 (11th Cir. 2006).

In the broader appraisal available to district courts after *Booker*, courts can now weigh a multitude of factors that were previously deemed "not ordinarily relevant," such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities." United States v. Gorsuch, 404 F.3d 543, 548 (1st Cir. 2005).

**Factual Background: The Offense**

It is agreed upon by all parties that Mr. Zirkind is a minor participant in the crimes under indictment.  The Government concedes that a three point reduction is warranted under U.S.S.G. §3B1.2.  As stated, "The Government does not have evidence that Benzion Zirkind knew the funds were narcotics proceeds, or understood the precise mechanisms for laundering the funds after he picked them up and delivered them to others in New York." (¶ 26 PSR)

The most salient point for this Court to be aware of is that Mr. Zirkind was, in fact, knowledgeable about the larger operation of the conspiracy being illegal but did not know about the conspiracy's specific connection to narcotics.  Participants who operated in Canada and elsewhere purposely kept lower level participants "in the dark" as to the inter-workings and sophistication of the operation as is prevalent in large conspiracies.  For example, higherups in a narcotics trafficking operation intentionally do not let the lower level participants "in on" trade routes and money matters.  Mr. Zirkind, to this day, is completely unfamiliar with the codefendants who were participating in the narcotics part of the operation.  Benzion Zirkind's low level role was to simply move money from one location to another.  After moving the money he was regularly paid $200-$500 for the transfer.  Clearly the higherups in the money laundering organization were making a great deal more money than Mr. Benzion Zirkind.  In point of fact, Mr. Zirkind never participated in any pickups from money laundering brokers as did certain codefendants. Benzion Zirkind never participated in dropping money at banks or wiring money to foreign locations, as did the codefendants. This defendant simply took money from one location in Brooklyn to another location in Brooklyn.  The Government estimated that Benzion Zirkind "retrieved approximately 80% of the total amount" laundered by Zalmund Zirkind, his uncle.  It would be wildly misleading to this Court if that quote from ¶ 15 of the  PSR were to insinuate that Benzion Zirkind were somehow 80% as responsible as his uncle.  The defendant's uncle was responsible for pulling this young man into this operation.  Knowing it was narcotics related currency the uncle continued to launder more of the cartel's money while, on the other hand,  Benzion immediately stopped participating as soon as he found out about the connections to narcotics.  The

uncle was more of a leader or organizer while Benzion was a minor participant as reflected in his 3 point reduction under the guidelines. It is all well and good to make sure each court sentences individuals who are similarly situated to a similar sentence, but in this matter Benzion Zirkind stands in a much different position than the other defendants charged in this conspiracy. His personal background, level of maturity, and level of participation stand in stark contrast to the other defendants.

**Sentencing Guidelines Calculations**

1. The parties agreed in the Plea Agreement and the United States Department of Probation has calculated that Mr. Benzion Zirkind's offense level is 22. Mr. Zirkind's Criminal History Category is I. Mr. Benzion Zirkind's Guidelines range is 41-51 months. Noteworthy, is that Mr. Zirkind's base offense level is a mere 8 points while his guidelines are increased a staggering 16 levels because of the amount of money being transported in the conspiracy. Mr. Zirkind's guideline sentence would stand at 0-6 months of incarceration but for this somewhat artificial enhancement. The points attributed to Mr. Zirkind's sentencing guidelines for "sophisticated means" further serve to exaggerate the guideline calculation for a young man whose role in the crime was markedly unsophisticated.

2. It is highly misleading to highlight the transaction found in ¶15 of the PSR which states that, "On approximately July 20, 2018, Benzion Zirkind retrieved approximately $200,000 in narcotics proceeds, which he transferred to an undercover DEA special agent ("UV-1")." "On August 28, 2018, Benzion Zirkind retrieved approximately $170,000 in narcotics proceeds, which he transferred to UC-1." Mr. Zirkind never knew the proceeds were from narcotics. Second, the first transaction never was actually laundered. The money was placed into a vehicle because the defendant was waiting for confirmation as to what to do with the money. This delay made the agent change plans and the transaction was never completed. The $170,000 was by far the largest transaction Benzion ever completed. Most transactions were $20,000-$60,000 over the 14 months that this crime occurred. In ¶33 of the PSR the probation office states that Mr. Zirkind accepted responsibility for his criminal conduct, admitting that, from 2018-2020 he agreed with others to commit these crimes. Although it may seem trivial this misstatement is not so minor. Mr. Zirkind, specifically, stopped participating several months into 2019 when he found out this was narcotics based money. He did not continue his involvement up to 2020. He left the conspiracy specifically because he was offended by the nature of source of the money. Mr. Zirkind understands the gravity of the crime and certainly that such crimes cause community damage, however when he found out exactly what the source of the funds were and why the amounts were increasing, he immediately stopped participating.

**Nature and Characteristics of the Defendant**

Benzion Zirkind is a kind soul as reflected in the many letters of support submitted to the Court. Mr. Zirkind is a caring person who simply does not have the deportment to feast on people or take advantage of others. He knows right from wrong and has a very good moral compass. After fully understanding the gravity of the true nature of this crime he has independently taken it upon himself to participate in a community service program that specifically helps people who have addictions and have various other mental health issues.

Many letters of support that a judge receives will generally wax on about the good character of a defendant, but Mr. Zirkind stands out as a person that is highly unlikely to ever commit a crime again. The Court should consider "taking a chance" by granting a non-incarceratory sentence based upon this character trait. He studied to become a rabbi at Rabbinical College of Quebec, Montreal, Canada as well as Yeshiva Beis Dovid Shlomo first year of Talmudic seminary but did not complete the degree because of various family situations. He sees good in people and never criticizes others. It is this type of moral background that actually led to the crime. When it was suggested he make extra money to erase his $1,500 credit card debt he felt very uncomfortable. Others minimized the crime and encouraged him to participate for a short period. Benzion Zirkind never wired any money in this case. He never deposited money into bank accounts. He never purchased items or goods so that money could be laundered into other forms. He never sent money to China. In point of fact, he never participated in the many "sophisticated" criminal moves that made this a "sophisticated" money laundering conspiracy. That sophistication gave this defendant a two-point enhancement under the guidelines. Nevertheless, having participated in the conspiracy with family members he technically receives these enhancements because of the means and amounts involved.

We ask this Court to consider Mr. Benzion's case very differently than his codefendants. First and foremost his co-defendants were very aware the monies in question were the proceeds of narcotics activity. Although Benzion Zirkind was advised to stay silent about inquiring about the sources he believed the illegality was connected to jewelers in New York and the monies transported to and from Canada were to avoid the different prices in currencies as well as tax ramifications that reporting agencies such as the banks and the IRS should not know about. When the transactions kept increasing in amount and frequency he knew it was foreseeable that what he was doing was illegal. Conversely, it is apparent that every other codefendant was well aware of the narcotics related nature of the proceeds and continued to launder money even knowing this fact.

A second factor which separates the defendant from the other defendants is his age. Mr. Benzion Zirkind was told that he could easily reduce his $1500 credit card debt by assisting his uncle and father in the business simply by transporting some money in New York from one location to another while the remainder of the operation would be handled by others. Initially, Benzion Zirkind was making $200 for transporting the money in a bag from one location to another. Later the amounts of illegal funds got larger as they trusted him to count and transport, therefore, he made in upwards of $500

N
N
N

per shipment at a later date.  The entire sum of earnings from this operation for Mr. Benzion Zirkind was somewhere between $20,000 to $25,000 range. The Government has acknowledged Mr. Zirkind's limited role by granting a minimal role designation.

      A third factor we ask the Court to consider under the important factors of §3553 is the less than ideal upbringing of this defendant. The defendant's father led a secretive life and did not provide the defendant with the type of emotional support that is generally reflected in a successful young man.  Instead Benzion was accustomed to witnessing a transient lifestyle where secrets were kept and he was expected to stay silent in the midst of disfunction and deceit.  It is not surprising that when the defendant's uncle and father told him he could eradicate his $1,500 credit card debt by transporting some money they were unconcerned about the immorality of dragging a young family member into a criminal enterprise.

      A fourth factor the Court should take into consideration is the fragile emotional state of this defendant.  Long before this case began Benzion Zirkind had been in a very "bad place" as a young person.  Lacking self-confidence and moving from school to school during his upbringing he failed to develop into a mature adult.  Several times in his life he has reached "rock bottom" and found little support from his family.  At age 17 he was taking a small dosage of Adderall to control his attention deficit disorder.  Later he gained more control over his emotional state and was taken off the drug.  The PSR at ¶ 66 incorrectly states Mr. Zirkind thought about suicide at age 19 when in fact he was only 17.  This is not to insinuate he turned to a life of crime or immoral acts during this period of insecurity but quite the contrary reaction occurred.  He found solace in his faith instead.  He studied to become a rabbi thinking his kind-hearted demeanor would be a good fit for a spiritual life.  Currently, Mr. Zirkind is seeing a therapist to uncover some of the emotional scars he has from his youth.  At age 23, he needs to build a more solid foundation before he can consider himself a mature adult.  He does not speak freely about these issues and they were uncovered through various family member interviews, reports, and professional consultation.  Counsel wants to be respectful to the privacy of this defendant, but this Court should be sensitive to these issues.  Suffice to state that a federal prison would be an environment that could crush the spirit of this young man and we ask this Court to consider the age and insecure nature of this defendant.

      The defendant does not wish to callously minimize his role.  He appreciates the fact that large sums of money were being laundered back and forth between Canada and the United States.  In complaining to a family member about a growing credit card debt of fifteen hundred dollars it was suggested he make extra money by moving these laundered funds in the Brooklyn, NY area.  When he agreed he anticipated that he would clear his credit card debt and stop participating in the operation.  Instead he made a very poor decision to continue making money from the transport of funds in and around Brooklyn from 2018-mid 2019. When he found out about his father's arrest and the true nature of the illegal enterprise he immediately stopped participating which is more than one can say about several other codefendants.

In order that the factors of §3553 be satisfied the Court obviously must consider several factors including the seriousness of the offense, promoting respect for the law, and to afford adequate deterrence.  A sentence of home confinement with the accompanying collateral damage of a felony conviction is appropriate.  Prison serves no purpose in a unique situation like this.  Mr. Zirkind stopped committing the crime long before his arrest so he clearly understood the serious nature of his actions.  Additionally, incarceration would subject Mr. Zirkind to an ever-increasing population of prisoners who have contracted Covid-19.   Importantly, Mr. Zirkind had no criminal record prior to this case.

**Substance Abuse**

Mr. Benzion Zirkind does not abuse drugs or alcohol.

**Employment History**

Mr. Zirkind has been gainfully employed continuously as described in the PSR (¶ 81-85). In 2017, Mr. Zirkind was employed at Jiminy Peak Pizza.  In 2018 he was employed at Prune Danish in Brooklyn , NY until having some mental health issues.  In 2019, he worked as a warehouse manager at Madison Seating in Elizabeth, NJ.   He worked at Swiss Time 2 in Somerset, NJ. from 2019-2020.

Presently, Mr. Zirkind is employed at Green Hill Trading Company, an E-Commerce company, that sells toiletries and pharmaceuticals.  He earns $15/hour.

His wife, Leah Zirkind,  is a court reporter who is independently contracted to do stenographic work on civil depositions.

**Financial Condition**

The defendant has been preparing to pay forfeiture in this matter.  It is consistent with his attempt to repay society for his wrongs.  He has set aside $10,000 of his (and his wife's) life savings.  They have a $12,000 tax bill* due in April, which they have put aside, leaving he and his wife with an extraordinarily small amount of money, nevertheless, he is bound and determined to pay off his court ordered forfeiture as soon as financially possible.

*(¶87 PSR lists the family assets.  We bring to the Courts attention the fact that the personal savings account of the "spouse" listing $12, 110.88 as an "Asset" is technically monies that were set aside for the spouse's tax bill.  It is not a true asset in light of the debt due.)

¶88 PSR lists a life insurance policy for Mr. Zirkind as having substantial value. We wish to highlight the fact that this life insurance policy is a term life policy that cannot be cashed out, but rather vests upon the death of Mr. Zirkind and would go to the beneficiary of the policy.  Mr. Zirkind has been contributing $120/month towards that policy.  It reflects a certain financial maturity for someone who is only 23 years of age but is focused on his spouse.  Again, Mr. Zirkind is an altruistic person by nature.

### Non-Guideline Sentence

There are various sentences available to the Court which would satisfy the main purposes of sentencing namely, punishment, deterrence, protection of the public.  , Rehabilitation can be accomplished in a number of ways besides incarceration.  The law requires the Court to impose the "least severe sentence necessary" to satisfy the four purposes of sentencing.

Placing Mr. Zirkind  on home confinement for six months, ordering forfeiture of his profits, (roughly $25,000), continuing employment, and continuing to serve his community which he has done so admirably at such a young age, appears to send the right message to a young man who was clearly pulled into this crime by older family members and who is likely to never re-offend.

Mr. Zirkind's young age, his education,  his altruistic demeanor before this case ever developed, his continuous employment record, and family ties and responsibilities satisfy the parameters of *§ 3553(a)*." United States v. Gorsuch, 404 F.3d 543, 548 (1st Cir. 2005).

### Other Mitigating Factors

"District Judges need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." U.S. v. Gaskill, 991 F.2d 82, 86 (3rd Cir. 1993). The Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." U.S. v. Dominguez, 296 F.3d 192, 196 n.7 (3rd Cir. 2002). Remember also that "if the six hundred-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm." U.S. v. Blareck II, 7 F.Supp.2d 192, 211 (E.D.N.Y. 1998).

### Conclusion

We respectfully ask this Court to sentence Mr. Benzion Zirkind to a sentence of 6 months home confinement, community service, and forfeiture as ordered.

7

**"A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy. As the greatest of poets have said 'mercy is the mightiest in the mightiest.' It becomes the throned monarch better than his crown." Justice Kennedy – United States Supreme Court (2003 ABA speech).**

                                                **Respectfully Submitted,**
                                                <u>**/s/Matthew D. Myers**</u>

                                                **Counsel for Mr. Benzion Zirkind**