

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

January 29, 2021

**BY ECF**
The Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Benzion Zirkind*, S9 19 Cr. 463 (DLC)

Dear Judge Cote:

      The Government respectfully submits this letter in advance of the sentencing of defendant Benzion Zirkind (the "defendant"). The defendant is scheduled to be sentenced on February 5, 2021, at 10:00 a.m. for his offense in this case: namely, conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956. The Government writes in advance of sentencing and in response to the defendant's sentencing submission, dated January 22, 2021. In the Presentence Investigation Report ("PSR"), dated January 22, 2021, the Probation Office calculated the applicable United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range to be 41 to 51 months' imprisonment. For the reasons set forth below, the Government submits that a sentence within this Guidelines range would be fair and appropriate in this case.

**A.    Background**

      **1.    The Offense**

      In 2017, the DEA began investigating a group of narcotics traffickers and money launderers operating in New York City, California, Mexico, Colombia, Hong Kong, Israel, Canada, and elsewhere. This network moved narcotics proceeds throughout the world using, among other techniques, trade-based money laundering ("TBML") and the Black Market Peso Exchange ("BMPE"). TBML involves purchasing consumer goods, such as cellular phones, using narcotics proceeds, and then selling those goods in a third country, where the proceeds are returned to the drug trafficking organization ("DTO"). (PSR ¶ 12.)

      The BMPE involves DTOs selling bulk United States currency to money-laundering brokers at a discount, who retrieve the bulk cash in the United States and deposit it into shell accounts in the United States while releasing pesos to the DTOs. At the same time, the money-laundering brokers will purchase bulk pesos from individuals in Mexico or elsewhere who wish to transfer money to the United States while circumventing the banking system. The money-laundering brokers will pay for these pesos by transferring narcotics proceeds from the U.S.-based shell accounts to accounts controlled by the individuals. (*Id.* ¶ 13.)

Using these methods, members of this conspiracy moved hundreds of millions of dollars overseas from the United States, much of which the DEA has been able to track through financial investigations and other methods. Through its investigation of money-laundering brokers, the DEA was able to learn about the sale and transportation of large narcotics shipments, resulting in the seizure of hundreds of kilograms of heroin, cocaine, fentanyl, methamphetamine, and other narcotics. (*Id.* ¶ 14.)

The defendant's role in the conspiracy was to collect bulk cash in Brooklyn and elsewhere, at the direction of co-defendants, and deliver it to co-defendants who would move the money internationally. For example, on August 28, 2018, the defendant delivered approximately $170,000 in narcotics proceeds to UC-1. (*Id.* ¶ 15.) In total, the Government's evidence indicates that the defendant was involved in laundering approximately $3.5 million during his participation in the conspiracy. (*Id.*)

### 2. The Defendant's Arrest and Bail

The defendant self-surrendered in the District of New Jersey on July 21, 2020, and was released on bail the same day. (PSR at 1.)

### 3. The Defendant's Plea and Guidelines Range

On October 29, 2020, the defendant pled guilty to the sole charge against him in the Indictment pursuant to a plea agreement (the "Plea Agreement"). In the Plea Agreement, the parties stipulated that the defendant was responsible for laundering between $1.5 and $3.5 million of illicit funds, and that he used sophisticated means to do so. (PSR ¶ 5.) The parties further stipulated that the defendant's offense level was 22 and that his criminal history category was I, resulting in a guidelines range of 41 to 51 months' imprisonment (the "Stipulated Guidelines Range"). (*Id.*) The defendant also admitted to the forfeiture allegation in Count One. (*Id.*)

### 4. The Probation Department's Recommendation

Consistent with the Plea Agreement, the Probation Department calculated the defendant's Sentencing Guidelines range to be 41 to 51 months' imprisonment. (PSR at 25.) The Probation Department recommends a below-Guidelines sentence of 24 months' imprisonment, primarily based on his "low risk of recidivism" and his "less[er] culpability" compared to his co-defendant Zalmund Zirkind. (PSR at 26-27.)

### 5. The Defendant's Sentencing Submission

The defendant filed his sentencing submission on January 22, 2021. ("Def. Mem."). In his letter, the defendant requests a sentence of six months' home confinement, community service, and forfeiture. (Def. Mem. at 7.) The defendant points to his relative lack of culpability and knowledge of the larger scheme, his age, and his mental health issues, as mitigating factors that warrant the variance he seeks.

**B. Discussion**

For the reasons that follow, the Government respectfully submits that a sentence within the Stipulated Guidelines Range, would be fair and appropriate in this case.

### 1. Applicable Law

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)).

### 2. A Sentence Within the Stipulated Guidelines Range Is Fair and Appropriate in this Case

The defendant's involvement in a complex international money laundering conspiracy warrants a meaningful sentence of incarceration. The 18 U.S.C. § 3553(a) factors particularly applicable here include: (1) the need for the sentence to reflect the nature of the defendant's conduct and to provide just punishment; (2) the need to deter the defendant from committing future crimes; and (3) promoting respect for the law prohibiting money laundering and deterring individuals similarly situated to the defendant from committing such crimes. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). These considerations weighs in favor of a sentence within the Stipulated Guidelines Range.

***First*, a sentence within the Stipulated Guidelines Range is warranted to reflect the nature of the defendant's criminal conduct and to provide just punishment.**

The defendant was part of a group that moved millions of dollars of narcotics proceeds from the United States to countries around the world. The defendant's particular role was to retrieve large quantities of cash from DTOs and deliver that money to the brokers who then laundered it into the black-market financial system. Actions like these facilitate the drug trade, and contribute to the devastation it wreaks on the communities where the drugs are sold. The $3.5 million the defendant laundered is consistent with the proceeds from the sale of roughly 60 kilograms of heroin or over 90 kilograms of cocaine – substantial quantities by any measure. Substantial consequences are necessary to adequately reflect the nature of this crime and to ensure sufficient punishment.

*Second*, **and relatedly, a sentence within the Stipulated Guidelines Range is necessary to deter the defendant from committing future crimes.**

Although the defendant's involvement in the overall conspiracy is a mitigating factor, which is reflected in the Stipulated Guidelines Range, his conduct does not reflect a one-time mistake or lapse of judgment. On the contrary, the defendant made numerous money deliveries for the conspiracy, for which he was paid tens of thousands of dollars – far more than the $1,500 credit card debt that allegedly motivated him to participate in this crime. Moreover, the defendant engaged in this conduct against the backdrop of his father's arrest for a similar offense.[1] His willingness to engage in this conduct while his father was dealing with a similar charge in Canada makes deterrence through imprisonment a necessary component of the sentence.

*Third*, **a sentence within the Stipulated Guidelines Range is needed to promote respect for the law, and to deter individuals similarly situated to the defendant from committing such crimes.**

The type of money laundering in which the defendant was involved requires an extensive network of participants both domestically and across the globe in order to succeed. Many of those involved may view themselves as protected from serious consequences, whether because of their efforts to cloak their illegal transactions in a veneer of legitimacy, because they are principally located abroad, or because of how the criminal conduct is divided among many conspiracy members. A substantial term of imprisonment will send a clear signal to others who have followed and may be considering following in the defendant's footsteps that those who participate in complex international money laundering schemes, regardless of their roles, will face serious consequences upon their apprehension.

---

[1] The defendant's submission and letter to the Court suggest that he stopped participating in the conspiracy after his father's arrest in 2019. (Def. Mem. at 3, Ex. A). However, his father was arrested in 2014 and his conviction was affirmed on appeal in 2019. *See* Michele Mandel, *Drug Money Courier Claimed Cash Was for Jews Fearing Holocaust*, Toronto Sun (May 18, 2019), *available at* https://torontosun.com/news/local-news/mandel-drug-money-courier-claimed-cash-was-for-jews-fearing-holocaust.

**C.     Conclusion**

For the reasons set forth above, a sentence within the Stipulated Guidelines Range of 41 to 51 months' imprisonment would be fair and appropriate in this case.

> Respectfully submitted,
>
> AUDREY STRAUSS
> United States Attorney
>
> By:  *[signature]*
> Aline Flodr / Stephanie Lake / Sheb Swett
> Assistant United States Attorneys
> (212) 637-1110 / 1066 / 6522

cc:     All counsel (by ECF)